# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| FRANCISCO ESQUIVEL III, | § | |
| TDCJ #2434261, | § | |
| **Plaintiff,** | § | |
| | § | **SA-22-CV-01386-XR** |
| v. | § | |
| | § | |
| **OFFICER REFUGIO MORA, BADGE** | § | |
| **#3409, COMAL COUNTY JAIL,** | § | |
| **Defendant.** | § | |

## ORDER

Before the Court are *pro se* Plaintiff Francisco Esquivel III's 42 U.S.C. § 1983 Amended Civil Rights Complaint, Defendant Officer Refugio Mora's Motion for Summary Judgment, Esquivel's responses, and Officer Mora's reply. (ECF Nos. 8, 32, 38–42, 46). Upon review, Officer Mora's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. (ECF No. 32).

### PROCEDURAL BACKGROUND

In his original Complaint, Esquivel brought § 1983 claims against: (1) Unknown Medical Administration; and (2) Administration of Comal County Sheriff Mark Reynolds.[1] (ECF No. 1). However, the Court found numerous deficiencies in the Complaint and ordered Esquivel to file an

---

[1] When he filed this action Esquivel was confined in the Comal County Jail ("CCJ") following his arrest for the offenses of: (1) tampering or fabricating physical evidence with intent to impair; and (2) felony bail jumping and failure to appear. *See* public.co.comal.tx.us/JailingDetail.aspx?JailingID=291256 (last visited July 25, 2024). Following a jury trial, Esquivel was convicted of felony bail jumping and failure to appear. *See* public.co.comal.tx.us/CaseDetail.aspx?CaseID=947747 (last visited July 25, 2024). The trial court sentenced him to fifty (50) years confinement. *Id.* Esquivel was subsequently transferred to the Texas Department of Criminal Justice and is currently confined in the McConnell Unit. (ECF Nos. 11, 45); *see* Texas Department of Criminal Justice Inmate Search (last visited July 25, 2024). It appears the case involving Esquivel's arrest for the offense of tampering or fabricating physical evidence with intent to impair is still pending. *See* public.co.comal.tx.us/CaseDetail.aspx?CaseID=885756 (last visited July 25, 2024). Comal County court records show a pretrial hearing is scheduled for October 2, 2024. *Id.*

amended complaint correcting the deficiencies. (ECF Nos. 1, 6). In response, Esquivel filed his Amended Complaint, which is the live pleading in this matter. (ECF No. 8). In his Amended Complaint, Esquivel added Officer Mora as a defendant, but omitted any claims against Unknown Medical Administration and Administration of Comal County Sheriff Mark Reynolds. (*Id.*). Accordingly, those entities have been terminated from this matter, leaving only Esquivel's claims against Officer Mora. (*Id.*). Esquivel alleges violations of his civil rights based on excessive force and deliberate indifference to his serious medical needs arising out of a June 2021 incident in which Officer Mora drove his head into a wall during his pretrial detention. (*Id.*). Esquivel also seems to allege a tort claim for gross negligence. (*Id.*).

The Court ordered service on Officer Mora, and in response he filed an answer and then a motion for summary judgment. (ECF Nos. 13, 32). In his motion, Officer Mora asserts, among other things, the defense of qualified immunity. (ECF No. 32). Esquivel filed several responses to the motion for summary judgment, and Officer Mora filed a reply. (ECF Nos. 38–42, 46).

## STANDARD OF REVIEW

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Funches v. Progressive Tractor & Implement Co.*, 905 F.3d 846, 849 (5th Cir. 2018). Where the nonmovant bears the burden of proof at trial, the summary judgment movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but need not, negate the elements of the nonmovant's case to prevail on summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). A complete failure of proof on an essential element of

the nonmovant's case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward *evidence* to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The *evidence* of the non–movant is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir.), *cert. denied*, 139 S.Ct. 69 (2018) (emphasis added) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Mere allegations in the nonmovant's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). However, verified allegations in an inmate–plaintiff's complaint are deemed competent summary judgment evidence. *See Al–Raid v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995). Nevertheless, even verified allegations cannot defeat summary judgment if they are simply "conclusory allegations," "unsubstantiated assertions," or constitute "only a scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Hunt v. Pierson*, 730 F. App'x 210, 212 (5th Cir. 2018) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

When, as here, a defendant properly asserts qualified immunity, the burden shifts to the plaintiff to demonstrate the defendant is not entitled to immunity by showing a violation of an actual constitutional right that was clearly established at the time of the alleged violation. *See Escobar v. Montee*, 895 F.3d 387, 393 (5th Cir. 2018); *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018). Despite this shifting burden, a court must still "view the facts in the light most favorable to the nonmoving party." *Darden*, 880 F.3d at 727 (alteration marks omitted).

In examining video evidence, the Fifth Circuit has stated it "assign[s] greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *See Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007) (holding that court not rely on plaintiff's description of facts where record discredits such description but should instead consider "the facts in the light depicted by the videotape.")); *see also Waddleton v. Rodriguez*, 750 F. App'x 248, 254 (5th Cir. 2018) (stating that "[t]his court will not adopt facts that are clearly contradicted by the video such as Waddleton's denial that he acted belligerently or resisted the officers.").

Whether qualified immunity is at issue or not, the Fifth Circuit requires a nonmovant to submit "significant probative evidence" from which the jury could reasonably find for the nonmovant. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). The nonmovant's evidence must raise more than some "metaphysical doubt as to the material facts." *Funches*, 905 F.3d at 849. A genuine issue of fact does not exist "if the record taken as a whole could not lead a rational trier of fact to find for the non–moving party." *Hunt*, 730 F. App'x at 212 (quoting *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014)). Moreover, when the opposing parties tell different stories and one is "blatantly contradicted by the record" such that "no reasonable jury could believe it," the reviewing court may not adopt the contradicted version of the facts for purposes of summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ANALYSIS

### A. Excessive Force Claim

#### 1. Esquivel's Allegations

According to Esquivel's Amended Complaint, on June 6, 2021, while confined in the CCJ,

he was handcuffed by Officer Mora and taken to a separation cell following a dispute with the officer over laundry. (ECF No. 8). Esquivel claims that during the transfer Officer Mora pulled his arms over his shoulders and "swung" or "slammed" him headfirst into a wall while he was handcuffed and cooperating. (ECF Nos. 8, 38). Esquivel denies resisting. (ECF No. 38). Although Esquivel admits he was "mouthy" and cursing, he denies threatening the officer. (ECF No. 38). Esquivel contends he suffered injuries to his shoulders and head. (*Id.*). Esquivel's allegations raise a claim of excessive force under the Fourteenth Amendment as Esquivel was a pretrial detainee at the time of the events.

## 2. *Substantive Law*

Officer Mora contends he is entitled to summary judgment as to Esquivel's excessive force claims because Esquivel cannot show a violation of his civil rights based on the alleged excessive force incident described above and because Esquivel cannot show the right asserted was clearly established. (ECF No. 32). In other words, Officer Mora contends he is entitled to judgment as a matter of law based on qualified immunity. (*Id.*).

### a. Qualified Immunity

Qualified immunity shields government officials from liability as long as the conduct in questions does not violate clearly established constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It is a shield from "'undue interference'" with a government

official's duties and "'potentially disabling threats of liability.'" *Collie v. Barron*, 747 F. App'x 950, 952 (5th Cir. 2018) (quoting *Harlow*, 457 U.S. at 806). When resolving questions of qualified immunity, a reviewing court "engage[s] in a two–pronged inquiry." *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (per curiam). Under the first prong, the Court must determine whether the facts alleged by the plaintiff "make out a violation of a constitutional right." *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 727 (5th Cir.), *cert. denied*, ___ U.S. ___, 139 S.Ct. 69 (2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008). The second prong requires the Court to determine whether the right in question was "clearly established" at the time of the alleged constitutional violation. *Darden*, 880 F.3d at 727; *Bush*, 513 F.3d at 500.

As set out above, a defendant's assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available. *Escobar*, 895 F.3d at 393; *Romero*, 888 F.3d at 176. The plaintiff "must rebut the defense by establishing a genuine fact dispute as to whether the official's allegedly wrongful conduct violated clearly established law." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citations and internal quotation and alteration marks omitted). "Qualified immunity is a complete defense, and [a defendant is] entitled to summary judgment on the basis of qualified immunity unless [the plaintiff] can show triable issues as to whether [the defendant] violated a clearly established right of which a reasonable officer would have been aware." *Brewer v. Hayne*, 860 F.3d 819, 824 (5th Cir. 2017).

b. <u>Excessive Force</u>

A pretrial detainee's claim of excessive force is governed by the Fourteenth as opposed to the Eighth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1995). "Force against a pretrial detainee is 'excessive' and a violation of the Fourteenth Amendment when the force was

objectively unreasonable." *Fairchild v. Coryell Cnty.*, 40 F.4th 359, 362–63 (5th Cir. 2022) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)). Thus, to defeat qualified immunity and prevail on a Fourteenth Amendment excessive force claim, a pretrial detainee must show the force was "purposely or knowingly used against him" in a manner that was "objectively unreasonable." *Kingsley*, 576 U.S. at 397. To make this showing, the pretrial detainee must show the defendant used force in a manner "not 'rationally related to a legitimate nonpunitive governmental purpose'" or that the defendant's actions were "'excessive in relation to that purpose.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

Whether a defendant's actions are objectively reasonable "'turns on the facts and circumstances of each particular case and various factors may bear on the reasonableness or unreasonableness of the force used.'" *Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 317 (5th Cir. 2021) (quoting *Kingsley*, 576 U.S. at 397). The factors to be considered include, but are not limited to: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the defendant; and (6) whether the plaintiff was actively resisting. *Fairchild*, 40 F.4th at 363 (quoting *Kingsley*, 576 U.S. at 397). Reasonableness must be assessed from the perspective of a reasonable corrections officer on the scene and take into account what he knew at the time, not based on 20/20 hindsight, and the need to make "split–second judgments" in "circumstances that are tense, uncertain, and rapidly evolving[.]" *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see Fairchild*, 40 F.4th 383.

### 3.   Application of Standard of Review and Substantive Law to the Evidence

The summary judgment evidence, as well as Esquivel's Amended Complaint, shows that on June 6, 2021, Esquivel washed his sheet and hung it on the rail to dry. (ECF Nos. 8; 32, Exhs. A–25, A–27). Officer Mora saw the sheet and found it obscured his view into the pod in which Esquivel and others were housed. (ECF No. 32, Exh. A–4). Officer Mora confiscated the sheet. (ECF Nos. 8; 32, Exhs. A–4, p. 3, A–25, A–27). After determining it belonged to Esquivel, Officer Mora brought him a new sheet. (ECF Nos. 8; 32, Exhs. A–4, A–25, A–27). Esquivel states in his Amended Complaint that the "new" sheet was torn, stained, and "stunk incredibly." (ECF No. 8). Esquivel requested the return of the original sheet. (*Id.*). According to Officer Mora, he told Esquivel to keep the sheet for now until he could get a replacement. (ECF Nos. 32, Exhs. A–4, A–27). Video shows Esquivel and Officer Mora talking as Esquivel holds the replacement sheet.[2] (ECF No. 32, Exh. A–6 at 00:00–00:16). Esquivel threw the sheet at Officer Mora's feet and the two began kicking it in and out of the pod doorway. (*Id.* at 00:16–00:23). At that point, Esquivel was ordered to step out of the pod and place his hands on the bars, which he did. (*Id.* at 00:24; Exh. A–5 at 00:42–00:46). In the video, Esquivel appears somewhat agitated, briefly removing his hands from the bars and turning to speak to Officer Mora. (ECF No. 32, Exh. A–5 at 00:42–00:54). Esquivel admits he was "mouthy" and used cursed words. (ECF No. 32, Exhs. A–4, A–27; ECF No. 38). The conversation with Officer Mora and Officer Derek Koehler continued for several minutes during which Esquivel continues to appear agitated but does not appear to be physically resisting commands, keeping his hands on the bars except for one brief moment. (ECF No. 32,

---

[2] There is no sound accompanying the video.

Exh. A–5 at 00:42–3:36, A–27). Ultimately, Officer Mora placed Esquivel in handcuffs, later stating he was concerned for officer safety. (ECF No. 32, Exhs. A–4, A–5 at 3:36).

Officer Mora stated he intended to escort Esquivel to the recreation yard "to cool off," but recent rain and flood control measures made the yard unavailable, so he began escorting Esquivel to a separation cell instead. (ECF No. 32, Exhs. A–4, A–25, A–27). According to Officer Mora, when Esquivel learned he was going to a separation cell he "began to get rowdy" and tense up. (ECF No. 32, Exh. A–4). Esquivel admits he was upset over the situation, but specifically denies being agitated. (ECF No. 38).

Officer Mora claims that as they neared the separation cell, Esquivel began making disrespectful and threatening statements, but the portion of the video he relies on neither supports nor negates his claim, showing only that Esquivel was speaking to him. (ECF No. 32, Exh. A–8). The video evidence then shows the event for which Esquivel alleges excessive force. (ECF No. 32, Exh. A–9). In his motion for summary judgment, Officer Mora contends the video shows Esquivel "quickly and unexpectedly" pulling away and turning to face him. (ECF No. 32). In his incident report, Officer Mora describes Esquivel's actions as "pushing off and turning around in an aggressive manner." (ECF No. 32, Exh. A–4). Officer Koehler describes Esquivel's actions as "pulling away." (*Id.*). Esquivel denies threatening or "refusing" commands. (ECF Nos. 8, 38). Officer Mora contends that in response to Esquivel's actions he used his right arm to secure Esquivel's shoulder and neck, but these actions coupled with Esquivel's movements caused Esquivel's head to hit a wall before he fell to the ground. (ECF No. 32). In his incident report, Officer Mora states that for "officer safety" he "assisted" Esquivel to the floor and their momentum caused Esquivel to hit his head. (ECF No. 32, Exh. A–4).

9

The Court reviewed the video and finds it does not show Esquivel "pulling away" or actually turning his body to face Officer Mora. (ECF No. 32, Exh. A–9 at 4:30). At most, the video shows Esquivel turning his head to speak to the officer. (*Id.*). This was the finding of Lieutenant Steve Garcia who was tasked with investigating the incident.[3] (ECF No. 32, Exh. A–27). Lieutenant Garcia found the video showed Esquivel "turning his head back to speak to escorting Officer Mora." (*Id.*). The video shows Officer Mora roughly grabbed Esquivel around the neck the instant he turned his head, swinging him around and driving his head into the concrete wall before taking him to the ground. (ECF No. 32, Exh. A–9 at 4:30–4:34). This was the finding of Lieutenant Garcia, who stated in his report that the video shows "Esquivel's head being driven into the wall by" Officer Mora. (ECF No. 32, Exh. A–27). Although Officer Mora claims that once on the ground Esquivel "continued to resist until other officers arrived," the video does not bear out this contention. (ECF No. 32). The video shows that once on the ground, Esquivel was quickly secured by Officers Mora and Koehler; Esquivel does not appear to be physically resisting. (ECF No. 32, Exh. A–9 at 4:34–5:07).

Following the incident, Esquivel was seen by LVN Lacy McNeil. (ECF No. 32, Exhs. A–27, B–1). She noted he complained of shoulder pain and had "friction discoloration" on the "crown" of his scalp. (ECF No. 32, Exh. B–1). Esquivel was reassessed the next day by RN Vincent Flowers who noted "head trauma to left upper parietal area, approx 2x4 cm moderate abrasion with minor swelling." (*Id.*). Esquivel complained of right neck and shoulder pain. (*Id.*).

---

[3] Officer Mora disparages any reference to, or reliance on, the findings and conclusions by Lieutenant Garcia by Esquivel because the Lieutenant's investigation and report concerns a violation of a Comal County Sheriff's Office's policy. (ECF No. 32). Although the Court agrees that a violation of jail or prison rules by an officer will not alone support a claim under § 1983 because it requires a violation of federal law or the Constitution, *see Scheidel v. Sec'y of Pub. Safety & Corrs.*, 561 F. App'x 426 (5th Cir. 2014), the policy at issue here mimics the standard applicable to a constitutional violation based on excessive force.

As referenced above, after the incident Lieutenant Garcia was instructed to investigate the use of force incident involving Esquivel and Officer Mora. (ECF No. 32, Exh. A–27). The complaint lodged against Officer Mora alleged that he "deliberately used unreasonable force while escorting [Esquivel] to a separation cell, causing [his] head to be driven into the wall." (*Id.*). It also alleged Officer Mora failed to ensure he was using a functioning body camera. (*Id.*).

After reviewing videos relating to the incident and considering various statements, including those of Officer Mora and Esquivel, Lieutenant Garcia found that it was "clear Officer Mora created his own environment by using poor judgment in dealing with inmate Esquivel. (*Id.*). He also determined that although Esquivel was verbally mouthy, at the time of the incident he was restrained with both hands behind his back. (*Id.*). Lieutenant Garcia sustained both allegations against Officer Mora, and as to the excessive force claim, found Officer Mora failed to use only the objectively reasonable amount of force necessary, given the totality of the circumstances, to successfully accomplish legitimate law enforcement objectives. (*Id.*). Officer Mora's actions were found to be in violation of Comal County Sheriff's Office policy. (*Id.*). As a result, he was "removed from CERT for one (1) year and receive[d] a Two (2) Day Suspension without pay." (*Id.*) He was also placed on a one–year probationary period and warned that any further violations would result in his termination. (*Id.*).

Applying the evidence to the *Kingsley* factors, the Court finds all the factors weigh in favor of Esquivel and his claim of excessive force. Officer Mora's own summary judgment evidence—specifically the video of the incident and the surrounding circumstances, as well as Lieutenant Garcia's findings—establishes the force he "purposely or knowingly used against [Esquivel]" was objectively unreasonable. *See Kingsley*, 576 U.S. at 397. Given the evidence

detailed above, the force Officer Mora used was not rationally related to a legitimate nonpunitive purpose. *Id.*

The evidence shows Officer Mora and Esquivel had a verbal disagreement about a bed sheet when Officer Mora decided to remove Esquivel from the pod. Admittedly, the discussion seemingly became heated on Esquivel's part. However, the various videos show Esquivel was always compliant—when Officer Mora decided to handcuff him and during transport—though he seemed to continue complaining about what was happening. As to the use of force incident itself, the video shows, and Lieutenant Garcia's report states, Esquivel merely turned his head to speak to Officer Mora. In response, Officer Mora immediately grabbed Esquivel around the neck and swung him toward the concrete wall, "driving" his head into the wall and taking him to the ground. The video shows no effort by Officer Mora to temper or limit the amount of force used. Moreover, the severity of the "security issue" was *de minimis*—it began as a disagreement over the provision of a bed sheet and a handcuffed inmate continuing to complain as he was escorted by two officers toward a separation cell. At the time Officer Mora grabbed Esquivel and drove his head into the wall, Esquivel was handcuffed and had made no physical movement toward the officer other than a turn of the head. Additionally, it was not a situation in which Officer Mora was alone with an inmate; rather, Officer Mora and Esquivel were accompanied by Officer Koehler the entire time.

Jail officials are justified in using some degree of force to restore discipline when an inmate is uncooperative and refusing legitimate directives. *Williams v. Carter*, No. H-20-0853, 2021 WL 4243571, at *9 (S.D. Tex. Sept. 17, 2021) (citing *Velazquez v. Baker*, No. 5:20-CV-078-BQ, 2021 WL 812505, at *5 (N.D. Tex. Jan. 28, 2021)). The courts have also recognized that "open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the

12

defiance is emanating from within a locked cell." *Rios v. McBain*, No. 504-CV-84, 2005 WL 1026192, at \*7 (E.D. Tex. Apr. 28, 2005), *report & recommendation adopted*, 2005 WL 1026192 (E.D. Tex. Apr. 28, 2005). Here, however, a reasonable officer would not have been justified in believing that the use of force was objectively reasonable due to Esquivel's actions. The videos show he posed no threat to the officers or to institutional security at any point during the events forming the basis of the excessive force claim, especially when he did nothing more than turn his head to speak to Officer Mora during his transport to the separation cell.

The evidence shows the force used by Officer Mora was more than necessary for the situation presented, which is the relevant inquiry. *See Noel v. Webre*, 426 F. App'x 247, 249–50 (5th Cir. 2011) (per curiam). While Esquivel was handcuffed and posing no physical threat, Officer Mora grabbed him by the neck, swung him around, and drove his head into a concrete wall. The evidence shows the force applied was not undertaken in a good faith effort to restore discipline or order, but to simply cause harm. *See id.*

As for his actual injury, the medical records show Esquivel was twice seen by medical personnel after the incident. Although not severe, both assessments noted an injury to the crown of his head, exactly where Esquivel's head contacted the concrete wall. Evidence produced by Esquivel shows he continued to complain about head and neck pain long after the excessive force incident. (ECF No. 38).

In summary, the Court finds that at a minimum the evidence raises a question of fact as to whether Officer Mora's use of force was objectively reasonably. *See Kingsley*, 576 U.S. at 397. Thus, Officer Mora is not entitled to summary judgment as to Esquivel's claim of excessive force based on the first prong of the qualified immunity inquiry. However, despite the existence of a fact

issue concerning Officer Mora's constitutionally impermissible conduct, he may still be shielded from liability if his actions did not violate clearly established law of which a reasonable officer should have known. Accordingly, the Court will now consider the second prong of the qualified immunity inquiry. *See Darden*, 880 F.3d at 727; *Bush*, 513 F.3d at 500.

The crucial question in the second prong of the qualified immunity inquiry is whether a "reasonable official would have understood that what he is doing violates [a constitutional] right." *Rivas–Villegas v. Cortesluna*, 595 U.S. 1, 7 (2021); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The issue is one of "fair warning." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). The Court recognizes the burden on the plaintiff is heavy because a right is clearly established only if relevant precedent places it beyond debate. *Id.* (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).

The Court further recognizes that it must frame the constitutional issue with specificity and granularity. *Morrow v. Meachum*, 917 F.3d 870, 874–75. It is insufficient, for example, to rely on the general notion that it is beyond debate that the Fourteenth Amendment prohibits the use of excessive force against pretrial detainees. *See id.* at 875 (noting it is "not enough" that to rely on the global concept that the Fourth Amendment prohibits certain unreasonable seizures). Clearly established law cannot be defined at that "high level of generality. *Id.* "Rather, ['the] dispositive question is whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis in original) (alteration marks omitted)). Overcoming the defense of qualified immunity is especially difficult in excessive force cases because it is an area of law extremely dependent on the facts of each particular case. *Id.* at 876 (citing *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)). As the Fifth Circuit recognized in *Morrow*, excessive force claims often turn on "split–second decisions," and

therefore, the law must be so clearly established that "in the blink of an eye" "every reasonable officer would know it immediately." *Id.*

Despite the foregoing, the Supreme Court has held that a plaintiff need not cite a case directly on point for a right to be clearly established; rather, all that is required is that existing precedent placed the constitutional question beyond debate. *Rivas–Villegas*, 595 U.S. at 7–8 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Moreover, "'general statements of the law are not inherently incapable of giving fair and clear warning'" to officers; rather, "'in [] light of [] pre–existing law, [the officer's] unlawfulness must be apparent.'" *White*, 580 U.S. at 79–80 (quoting *Anderson*, 483 U.S. at 640; *United States v. Lanier*, 520 U.S. 259, 271 (1997)). Thus, it is not necessary for the "very action in question" to have previously been held unlawful, but simply that in light of pre–existing law, the unlawfulness is apparent. *Hope*, 536 U.S. at 739 (citing *Anderson*, 483 U.S. at 640). In other words, in some instances "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *Id.* at 741 (quoting *Anderson*, 483 U.S. at 640). This precedent makes it clear that an officer may still be on notice that his conduct violates established law even in novel factual circumstances, rejecting a requirement that previous cases be "fundamentally similar." *Id.* (quoting *Lanier*, 520 U.S. at 268).

Framing the constitutional question in this case with specificity and granularity as required, the Court finds the issue is whether Officer Mora, who was accompanied by a second officer, had "fair notice" that his actions in grabbing a handcuffed, compliant inmate by the neck and swinging him headfirst into a wall when the inmate simply turned his head toward the officer during an escort to a separation cell, violated the inmate's Fourteenth Amendment right to be free from

excessive force. *See Morrow*, 917 F.3d at 874–75. The Court finds there is existing precedent, including at least one case cited by Esquivel, establishing Officer Mora had "fair warning" that his actions violated Esquivel's Fourteenth Amendment right to be free from excessive force.

The Court begins with one of the cases cited by in his response to Officer Mora's motion for summary judgment, *Fairchild v. Coryell Cnty., Tex.*, 40 F.4th 359 (5th Cir. 2023). (ECF No. 46). In that case, an inmate caused a disruption. *Id.* at 364. Jailers sprayed her with pepper spray but when they tried to subdue her, she took a jailer's handcuffs. *Id.* As the inmate resisted, jailers punched her in the face and applied knee strikes in an attempt to regain the handcuffs and control of the situation. *Id.* However, after she was handcuffed, jailers applied weight to her neck and back for more than two minutes until she became unresponsive. *Id.* The inmate died. *Id.* at 362.

The appellate court found notice of unlawfulness based on case law lacking for the punches and knee strikes given the inmate's resistance and the need to subdue her. *Id.* at 367–68. However, once the inmate was subdued, lying prone and handcuffed, the jailers' actions in continuing to apply pressure to her neck, back, and legs established a violation of clearly established law. *Id.* at 368. This case stands for the proposition that jailers' use of force was justified when the inmate was non–compliant and resisted officers' efforts to subdue her, but their use of force once the inmate was subdued and complaint was excessive, violating the inmate's right to be free from excessive force. Thus, at the time of Officer Mora's encounter with Esquivel, it was clearly established in this circuit that when an inmate is compliant and handcuffed, use of force is unlawful. The Court finds Officer Mora had "fair warning" that his conduct in this case violated Esquivel's constitutional right to be free from excessive force.

The Court has found additional cases providing Officer Mora with fair notice that his actions were unlawful. In *Bernal v. Trevino*, a case from this Court, Bernal, a pretrial detainee, asked an officer about the status of a property request, specifically property the detainee asked the officer to place in the inmate–storage room. No. 5:17-CV-00080-OLG, 2020 WL 4926546, at *1 (W.D. Tex. Aug. 21, 2020) (*report & recommendation adopted* Sept. 20, 2020). According to Bernal, the officer was angered, apparently believing Bernal was accusing him of theft, and ordered Bernal back to his bunk. *Id.* Bernal complied but told another inmate about what had transpired. *Id.* Bernal then said, "Forget him." *Id.* Overhearing the remark, the officer ran toward Bernal, chest–bumping him and striking him several times. *Id.* According to Bernal, the officer continued to strike him and although he briefly fought back out of fear for his life, Bernal eventually laid on the floor and placed his hands in the air. *Id.* Despite this, the officer continued to strike him until other officers intervened. *Id.*

Bernal brought a § 1983 claim of excessive force; the officer moved for summary judgment based on qualified immunity. *Id.* Accepting Bernal's account of events as true under the applicable summary judgment standard, this Court rejected the officer's qualified immunity defense. *Id.* at *4. This Court found that "[i]f as Bernal asserts, [the officer's] actions were provoked by nothing except an inquiry about Bernal's property (however loud[ly] that might've been) and Bernal's rapid return to his bunk in conformity with [the officer's] order, then there would've been no justification for the use of force. Certainly, [the officer] wouldn't have needed to continue striking Bernal once Bernal lay prone with his hands in the air." *Id.* at *3 (citing *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 478 (5th Cir. 2014) ("[C]ourts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force.").

Although *Bernal* is not factually identical to the events in this case, it need not be. *See Hope*, 536 U.S. at 739. *Bernal* identifies a general constitutional rule that provided fair warning to Officer Mora that his actions in this case were unlawful. Much like inmate Bernal, Esquivel had a verbal disagreement over property—a sheet. Following the disagreement, Officer Mora ordered Esquivel out of the pod for a conversation. The video demonstrates Esquivel's compliance with orders, exiting the pod, placing his hands on the bars, submitting to being handcuffed, and walking peacefully with Officers Mora and Koehler. Although Esquivel may have loudly complained about the sheet and Officer Mora's decision to place him in a separation cell, Esquivel's turning toward the officer to complain or verbally contest the situation, however loudly and aggressively, did not, pursuant to *Bernal*, justify the officer's actions in grabbing Esquivel by the neck and swinging him headfirst into the wall when Esquivel was handcuffed and exhibiting no signs of physical resistance. The Court finds *Bernal* placed Officer Mora on notice that his conduct violated established law even in this factual circumstance. *See Hope*, 536 U.S. at 741.

Beyond *Bernal*, there is the Fifth Circuit's decision in *Boyd v. McNamara*, 74 F.4th 662 (5th Cir. 2023), *cert. denied sub nom*, *Johnson v. Boyd*, 144 S. Ct. 562 (2024). Although *Boyd* was decided after the events at issue here, it is relevant because it concluded that by 2017, it was clearly established that a pretrial detainee's act of pulling his arm away from an officer and exchanging profanities, *see Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir. 2013), passively resisting by turning his head to look at and speak to an officer while his hands were behind his back, *see Hanks v. Rogers*, 853 F.3d 738, 746–47 (5th Cir. 2017), or pulling his arm away while refusing an officer's instructions, *see Trammel v. Fruge*, 868 F.3d 332, 337 (5th Cir. 2017), did not, standing alone, constitute the kind of threatening behavior or belligerence that justifies the use of force.

18

*Boyd*, 74 F.4th at 667–68. In sum, in the Fifth Circuit, it has been "well–established … that officers may not 'use gratuitous force against a prisoner who has already been subdued or incapacitated.'" *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016).

The Court finds the cases cited by the Fifth Circuit in *Boyd*—cases that pre–date the events at issue here—put Officer Mora on notice that he could not lawfully or constitutionally grab and swing headfirst into a concrete wall a pretrial detainee who, like Esquivel, may have been passively resisting by turning his head and protesting the officer's actions. As recognized in *Trammel*, "where an individual's conduct amounts to mere 'passive resistance,' use of force is not justified." 868 F.3d at 341; *see Hanks*, 853 F.3d at 746 (holding plaintiff's initial refusals to follower officer's instructions amounted to, "at most passive resistance" and did not justify officer's use of force). The cases cited in *Boyd* also show Esquivel's act of turning his head to speak or even yell at Officer Mora did not, standing alone, constitute the type of behavior justifying the force used against him. The video shows these were the sole acts immediately taken by Esquivel prior to Officer Mora's use of force.

The Court finds that any attempt by Officer Mora to distinguish *Ramirez*, *Trammel*, and *Hanks* based on the existence of minor factual discrepancies, e.g., the type of passive conduct exhibited by the detainee or the type of force used by the officer, would not create uncertainty about the unlawfulness of his actions or the notice provided. Boyd, 74 F.4th at 669 ("Distinctions between cases are… relevant only if they make the applicability of prior precedent unclear."). The relevant inquiry is "fair notice," and the law can be clearly established despite the existence of notable factual distinctions between the precedent establishing unlawfulness and the case before

the Court so long as the officer was given fair warning that his conduct violated constitutional rights. *Ramirez*, 716 F.3d at 379.

Accordingly, the Court finds that a jury could rationally conclude that the situation preceding Officer Mora's use of force did not justify his actions. Numerous cases put Officer Mora on notice that his actions, given Esquivel's passive resistance in merely turning his head and speaking to the officer, were unlawful and constitutionally infirm. The Court therefore finds Officer Mora is not entitled to summary judgment as to Esquivel's Fourteenth Amendment claim of excessive force.

### B. Deliberate Indifference to Serious Medical Needs Claim

In Esquivel's Amended Complaint, he states only "$25,000.000 DELIBERATE INDIFFERENCE," regarding his medical deliberate indifference claim, providing no additional statements or factual support. (ECF No. 8). He then makes vague references to his medical claim in two of his responses to Officer Mora's motion for summary judgment. (ECF Nos 38, 39). In one response he states, "I feel I wasn't evaluated properly considering [the] sever[ity] of the blow my head took from a solid brick wall." (ECF No. 38). He also notes his requests for photographs of his alleged injuries. (*Id.*). In separate response, Esquivel attaches excerpts from a June 12, 2023 affidavit by Nelda Delgado, who describes herself as the CCJ Nursing Supervisor and the custodian of certain records maintained by the Comal County Sheriff's Office. (ECF No. 39). This affidavit appears to have been produced to Esquivel by Officer Mora during discovery. (ECF No. 29). Nurse Delgado refers to attached excerpts from Esquivel's medical records concerning his treatment following the alleged excessive force incident. (ECF No. 39). These are the only references by Esquivel to his deliberate indifference claim.

*1. Substantive Law*

Regarding a pretrial detainee's claim of inadequate medical treatment, a jail official violates the Fourteenth Amendment when he or she acts with deliberate indifference to an inmate's serious medical needs. *See Tiede v. Salazar*, 518 F. Supp.3d 955, 970 (W.D. Tex. 2021); *see also Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001) (discussing deliberate indifference to medical needs in context of Eighth Amendment). "Deliberate indifference" is an extremely difficult standard to meet. *Domino*, 239 F.3d at 756. A plaintiff must show the official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Tiede*, 518 F. Supp.3d at 970 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "[F]acts underlying a claim of 'deliberate indifference' must *clearly evince* the medical need in question and the alleged official dereliction." *Johnson*, 759 F.2d at 1238. Thus, the deliberate indifference standard is only met where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Moreover, the deliberate indifference standard is based on actual knowledge, not what the prison official allegedly should have known. *Hare*, 74 F.3d at 650. This means the defendant must have subjectively intended the harm to occur. *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 460 (5th Cir. 2001). Thus, an inadvertent failure to provide medical care is insufficient to state a claim. *Johnson*, 759 F.2d at 1238. In other words, allegations of mere negligence or medical malpractice do not state an actionable § 1983 claim. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

21

### 2. *Application of Standard of Review and Substantive Law to Evidence*

Because Officer Mora asserted qualified immunity as a defense, the burden is on Esquivel, *see Brewer*, 860 F.3d at 824, to show the officer violated his rights by refusing to treat him, ignoring his complaints, intentionally treating him incorrectly, or otherwise showing a "wanton disregard" to his serious medical needs. *Tiede*, 518 F. Supp.3d at 970. Esquivel fails to satisfy his burden. As previously noted, Esquivel has done little more than offer cursory references to dissatisfaction with the medical treatment he received. *See, supra.* He does not assert, much less provide evidence, that Officer Mora was deliberately indifferent to any serious medical need relayed by Esquivel following the alleged excessive force incident on June 6, 2021. (ECF No. 8). Moreover, the summary judgment evidence produced by Officer Mora shows that following the incident neither Officer Mora nor anyone else at the CCJ ignored or disregarded Esquivel's medical needs. (ECF No. 32, Exhs. B, B–1).

In an affidavit attached to Officer Mora's motion for summary judgment, Nurse Delgado, the CCJ Nursing Supervisor, states her responsibilities include assessing inmates for illnesses and injuries. (*Id.*, Exh. B, p. 2). She avers she never received a request for medical attention from Esquivel in connection with the June 6, 2021 incident. (*Id.*, Exh. B, p. 3). However, Nurse Delgado further states that despite the absence of a request for medical attention, Esquivel was seen and assessed by LVN Lacy McNeill soon after the alleged excessive force incident. (*Id.*, Exh. B–1). Nurse McNeill states in her medical notes that Esquivel complained of shoulder pain, but he was able to fully rotate his shoulder without discomfort and no deformities were noted. (*Id.*). She also looked at Esquivel's head and noted some "friction discoloration," which Esquivel was unaware of until told. (*Id.*). Esquivel denied any pain or the need for medication. (*Id.*). Esquivel told

LVN McNeill that he did not need medical attention. (*Id.*). Esquivel was seen again the next day by RN Vincent Flowers for a follow–up assessment. (*Id.*). The nurse observed a moderate abrasion with minor swelling on Esquivel's head. (*Id.*). The only complaint lodged by Esquivel related to pain in his shoulder and the right side of his neck. (*Id.*).

Esquivel's own evidence, attached to one of his responses to Officer Mora's motion for summary judgment, shows an absence of deliberate indifference. (ECF No. 39). As set out above, Esquivel attached excerpts from a June 12, 2023 affidavit from Nursing Supervisor Delgado. (*Id.*). In those excerpts Nursing Supervisor Delgado notes that the medical records show Esquivel was seen by LVN McNeill soon after the alleged excessive force incident, but stated he did not need medical attention. (*Id.*). The affidavit then confirms Esquivel was seen again the next day by RN Flowers. (*Id.*).

Thus, all the summary judgment evidence—even that produced by Esquivel himself—shows neither Officer Mora nor any other member of the CCJ staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Tiede*, 518 F. Supp.3d at 970. Rather, the evidence shows that after the alleged excessive force incident someone on the CCJ staff called for a medical assessment. (ECF No. 32, Exhs. B, B–1; ECF No. 39). Esquivel was evaluated and then re–evaluated the next day. (ECF No. 32, Exhs. B, B–1; ECF No. 39).

Accordingly, the Court finds Officer Mora is entitled to judgment as a matter of law as to Esquivel's deliberate indifference claim. From the outset, Esquivel failed to allege sufficient facts to support his contention that Officer Mora violated his Fourteenth Amendment rights by engaging in deliberate indifference to his serious medical needs. Additionally, the undisputed summary

judgment evidence produced by both Officer Mora and Esquivel conclusively establishes that rather than ignoring Esquivel's medical needs or refusing to treat him, CCJ staff provided Esquivel with medical attention immediately after the alleged injury occurred and again in a follow–up evaluation the next day. These actions are the very antithesis of deliberate indifference to Esquivel's serious medical needs.

### C. Gross Negligence Claim

Esquivel alleges gross negligence, which must either be based on acts forming the basis for his claims for excessive force or deliberate indifference to serious medical needs as these are the only claims asserted. (ECF No. 8). However, much like his deliberate indifference claim, Esquivel provides no explanation or factual allegations in support of this claim, stating in his Amended Complaint "300,000.00 GROSS NEGLIGENCE TORT." (*Id.*). The Court construes this as either a state–law claim under the Texas Tort Claims Act ("TTCA") or a negligence claim under § 1983. *See* TEX. CIV. PRAC. & REM. CODE. ANN. §§ 101.057(2), 101.106(f). Officer Mora contends he is entitled to summary judgment as to this claim based on: (1) governmental immunity; or (2) the inability to bring a negligence claim under § 1983. (ECF No. 32).

#### 1. TTCA

Esquivel's gross negligence claim is brought against Officer Mora, the only named defendant in this matter. (ECF No. 8). Officer Mora is, obviously, an individual. The TTCA does not include individuals under its definition of a governmental unit. *Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009). Therefore, individuals such as Officer Mora may not be sued under the TTCA as the act 'does not govern suits brought directly against an employee of the State.'" *Id.* (quoting *Huntsberry v. Lynaugh*, 807 S.W.2d 16, 17 (Tex. App.—Tyler 1991, no writ)).

Thus, the Court finds Officer Mora is entitled to summary judgment as to Esquivel's gross negligence claim. *See id.*; *see also Sinegal v. City of El Paso*, 414 F. Supp.3d 995, 1010 (W.D. Tex. 2019).

### 2. Negligence

To the extent Esquivel is alleging gross negligence as some sort of constitutional violation under § 1983 as opposed to a state–law claim under the TTCA, the Court agrees with Officer Mora that such claim fails, entitling the officer to summary judgment. (ECF No. 32). The Supreme Court has long recognized that § 1983 imposes liability on state actors for violations or *constitutional* rights, not violations of duties of care arising under tort law. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). It has also held that negligence by a jail or prison official does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 332–35 (1986). Therefore, mere negligence by a state official does not give rise to a viable § 1983 claim. *See id.*

### CONCLUSION

Based on the foregoing analysis, the Court finds Officer Mora is not entitled to summary judgment as to Esquivel's § 1983 claim of excessive force. He is, however, entitled to summary judgment as to Esquivel's § 1983 claim of deliberate indifference to serious medical needs as well as his gross negligence claim.

**IT THEREFORE ORDERED** that Officer Mora's Motion for Summary Judgment (ECF No. 32) is **GRANTED IN PART AND DENIED IN PART**. The motion is **DENIED** with respect to Esquivel's claim of excessive force in violation of his Fourteenth Amendment rights and **GRANTED** in all other respects.

**IT IS FURTHER ORDERED** that Esquivel's claim against Officer Mora for deliberate indifference to serious medical needs, as well as his gross negligence claim (under either the TTCA or § 1983), are **DISMISSED WITH PREJUDICE** and Esquivel shall take nothing in this cause against Officer Mora based on those claims. Esquivel's excessive force claim against Officer Mora remains pending.

It is so **ORDERED**.

**SIGNED** this 25th day of July, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE